IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| MATT RAFFERTY,<br>On behalf of himself and all others similarly situated,<br><br>　　　　　Plaintiffs,<br><br>　　vs.<br><br>HAT WORLD, INC.<br><br>　　　　　Defendant. | CASE NO.<br><br>JUDGE<br><br>**PLAINTIFFS/ARBITRATION CLAIMANTS' PETITION FOR APPROVAL OF ARBITRATION SETTLEMENT** |

Plaintiffs/Arbitration Claimants respectfully move this Honorable Court to review the Parties' Joint Stipulation of Settlement and Release (the "Settlement") and for an Order approving the Settlement as fair and reasonable. In support of this motion, the Plaintiffs/Arbitration Claimants submit the following exhibits:

Exhibit 1:  Form Settlement Agreement and Release of Claims

Exhibit 2:  Declaration of Anthony J. Lazzaro

I.　　**FACTUAL AND PROCEDURAL BACKGROUND**

　　A.　　**The Action and Settlement Negotiations**

On February 22, 2017, Julia Shumate initiated a collective action against Genesco, Inc. and Hat World, Inc., d/b/a Lids Sports Group ("Lids") as a result of Defendants' practices and policies of not paying its hourly store managers, including Shumate and other similarly-situated employees, overtime compensation at the rate of one and one-half times their regular rate of pay for the hours they worked over 40 each workweek, in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201-219, as well as a "class action" pursuant to Fed. R. Civ. P. 23 to remedy violations of the Ohio Minimum Fair Wage Standards Act ("OMFWSA"), R.C. 4111.03,

as well as other claims. *See*, 1:17-CV-03574.

Specifically, Plaintiffs/Arbitration Claimants allege that Defendants attempted to pay them one-half times their regular rate of pay according to the U.S. Department of Labor's Fluctuating Workweek ("FWW") method of payment. Plaintiffs/Arbitration Claimants allege that Defendants unlawfully used the FWW method of payment by failing to pay Plaintiffs/Arbitration Claimants and other similarly-situated store managers a fixed weekly salary because of bonuses they were paid.

On October 5, 2017, the action was transferred to the U.S. District Court for the Southern District of Indiana ("Indiana District Court"). On September 19, 2018, the Parties filed a Stipulation Regarding Dismissal of Opt-In Plaintiffs Subject to Arbitration Agreements. Thereafter, the Plaintiffs/Arbitration Claimants who signed arbitration agreements began the process of arbitrating their claims, including some who have claims in this jurisdiction. The Plaintiffs/Arbitration Claimants who did not sign arbitration agreements reached a settlement with the Defendants and the Indiana District Court recently approved their agreement. The Plaintiffs/Arbitration Claimants reached a separate settlement agreement with the Defendants and now seek similar approval from this Court.

**B.     The Settlement Terms**

The terms of the Settlement Agreement include, *inter alia*: the total Settlement Payment to be made by Lids on behalf of the Defendants, the calculation of Individual Payments to Arbitration Claimants, the process for distributing Individual Payments to Arbitration Claimants, and the proposed distribution of reasonable attorneys' fees and expense reimbursements to Plaintiffs' Counsel.  (*See* Exhibit 1.)

The Arbitration Claimants will release Defendants from all federal, state, and local wage and hour claims, rights, demand, liabilities and causes of action of every nature and description, including, but not limited to, unpaid wages, unpaid overtime compensation, liquidated damages, interest, attorneys' fees and expenses, as alleged in the Complaint, whether known or unknown, pursuant to the FLSA and OMFWSA for the Released Period. (*Id.*) The "Released Period" for Arbitration Claimants shall mean the period between February 22, 2014 and the date the District Court enters final approval. (*Id.*)

The Individual Payments for which Arbitration Claimants are eligible will be calculated proportionally on each Claimant's alleged overtime, as determined by Plaintiffs' Counsel. (*Id.*) The Calculation Period for Arbitration Claimants shall mean the period between December 27, 2014 and October 29, 2016. (*Id.*)

## II. THE FLSA SETTLEMENT SHOULD BE FINALLY APPROVED

The proposed Settlement is subject to approval by the Court pursuant to § 216(b) of the FLSA. As shown in the attached Declaration of Plaintiffs' Counsel Anthony J. Lazzaro, and as explained below, Court approval is warranted on all scores. (*See* Exhibit 2.)

### A. The Settlement Distributions Are Fair, Reasonable and Adequate

The court presiding over an FLSA action may approve a proposed settlement of the action under the FLSA § 16(b) "if it was reached as a result of contested litigation and it is a fair and reasonable resolution of a *bona fide* dispute between the parties." *Knox v. Jones Grp.*, No. 15-CV-1738 SEB-TAB, 2017 WL 3834929, at *1 (S.D. Ind. Aug. 31, 2017)(citing *Lynn's Food Stores, Inc. v. U.S.*, 679 F.2d 1350, 1352-54 (11th Cir. 1982) (citing *Brooklyn Savings Bank v. O'Neil*, 324 U.S. 697, 65 S.Ct. 895, 89 L.Ed. 1296 (1945)); *Roberts v. Apple Sauce, Inc.*, No. 3:12-cv-830, 2014 WL 4804252, at *1 (N.D. Ind. Sept. 25, 2014); *Burkholder v. City of Ft.*

*Wayne*, 750 F.Supp.2d 990, 994-95 (N.D. Ind. 2010)); *see also Butler v. Am. Cable & Tel., LLC*, No. 09 Civ. 5336, 2011 WL 4729789, at *8-9 (N.D. Ill. Oct. 6, 2011)); *Briggs v. PNC Fin. Servs. Grp., Inc.*, No. 1:15-CV-10447, 2016 WL 7018566, at *1 (N.D. Ill. Nov. 29, 2016).

"A one-step settlement approval process is appropriate." *Knox*, 2017 WL 3834929 at *2 (citing *Stokes v. Consol. Wings Inv., LLC*, No. 15-cv-01932-RLY-DKL (S.D. Ind.), ECF No. 61 (approving FLSA collective action settlement in one step); *Briggs v. PNC Fin. Servs. Group, Inc.*, No. 15-cv-10447, 2016 WL 7018566 (N.D. Ill. Nov. 29, 2016) (citing *Koszyk v. Country Fin. a/k/a CC Servs., Inc.*, No. 16 Civ. 3571, 2016 WL 5109196, at *1 (N.D. Ill. Sept. 16, 2016)) ("'A one-step settlement approval process is appropriate[ ]'" in FLSA settlements.); *Castillo v. Noodles & Co.*, No. 16-cv-030306, 2016 WL 7451626, at *1 (N.D. Ill. Dec. 23, 2016) (granting request for one-step approval process); *Prena v. BMO Fin. Corp.*, No. 15 Civ. 9175, 2015 WL 2344949, at *1 (N.D. Ill. May 15, 2015) (same).

"It is a well settled principle that the law generally encourages settlements." *Knox*, 2017 WL 3834929, at *1 (quoting *Dawson v. Pastrick*, 600 F.2d 70, 75 (7th Cir. 1979)). To determine whether a settlement is "fair and reasonable," courts in the Seventh Circuit often analyze the following factors: (1) whether the parties fairly and honestly negotiated the settlement; (2) if serious questions of law and fact existed that placed the ultimate outcome of the litigation in doubt; (3) does the value of immediate settlement outweighs the mere possibility of future relief after protracted litigation; and (4) in the judgment of the parties, is the settlement is fair and reasonable. *Id.* at *1 (citing *Cannon v. Time Warner NY Cable LLC*, 2015 WL 4498808 (D. Colo. July 24, 2015); *Soto v. Wings 'R Us Romeoville, Inc.*, No. 15 C 10127, 2018 WL 1875296, at *1 (N.D. Ill. Apr. 16, 2018); *Bainter v. Akram Investments, LLC*, No. 17 C 7064, 2018 WL 4943884, at *1 (N.D. Ill. Oct. 9, 2018)).

4

"The reviewing Court normally approves a settlement where it is based on 'contentious arm's-length negotiations, which were undertaken in good faith by counsel' and where 'serious questions of law and fact exist such that the value of an immediate recovery outweighs the mere possibility of further relief after protracted and expensive litigation.'" *Roberts v. Apple Sauce, Inc.*, No. 3:12-CV-830-TLS, 2014 WL 4804252, at *1 (N.D. Ind. Sept. 25, 2014)(quoting *Burkholder v. City of Ft. Wayne*, 750 F.Supp.2d 990, 994–95 (N.D.Ind.2010)(quoting *Reyes v. Buddha–Bar NYC*, No. 08 CV 2494(DF), 2009 WL 5841177, at *3 (S.D.N.Y. May 28, 2009)).

All components of the proposed distribution are proper and reasonable, and the settlement, as a whole, is fair, reasonable and adequate for Arbitration Claimants.

Here, the four-factor standard supports approval of the Settlement.

### 1. The Parties Fairly and Honestly Negotiated the Settlement.

The Parties' Counsel have extensive experience litigating FLSA claims. (*See* Ex. 2.) The Parties have engaged in substantial investigation prior to and during the negotiations, including significant discovery, motion practice and arbitration, and the issues are well understood by both sides. (*Id*. at ¶ 12.)

The Parties participated in a private mediation with John Marshall of Marshall & Forman, LLC and engaged in additional settlement negotiations, correspondence, and discussions for an additional four (4) months following mediation. (*Id*. at ¶¶ 21-22.) Counsel engaged in numerous telephone calls and email correspondence over those four (4) months. The settlement negotiations were fair and honest, and involved Counsel for the Parties openly and honestly discussing the Arbitration Claimants' claims and damages, Defendants' defenses, future discovery, the cost and risk of further arbitration on both sides, possible appeals, and a reasonable resolution. (*See* Ex. 2.)

### 2. Serious Questions of Law and Fact Existed that Placed the Ultimate Outcome of the Arbitrations in Doubt.

As shown by the extensive filings in this matter, there are serious questions of law and fact that exist in this matter that place the ultimate outcome of litigation in doubt. (*See* Docket.) There was extensive briefing throughout the course of the litigation for the Plaintiffs/Arbitration Claimants and the disputes relating to questions of law and fact were extensively contested. (*See* Docket; Ex. 2 at ¶ 28.) Similar legal and factual issues were anticipated in each of the Arbitration Claimants' cases.

As those claims relate to the Plaintiffs/Arbitration Claimants, Defendants filed two (2) motions to dismiss, premised on the argument that the Fluctuating Workweek was inapplicable to payment of performance-based bonuses provided in addition to a base salary in the litigation and those could be raised in each arbitration. (*See* Doc. 40 and 81.) Plaintiffs vehemently opposed both motions. (See Docs. 49 and 97.)

Defendants argued that they have never paid bonuses tethered to the number of hours worked and that their bonus policies support such. (*Id*.) Plaintiffs argued that Defendants' payment of bonuses and commissions were not entirely untethered from the hours worked. (*See* Docs. 49 and 97.) Defendants filed voluminous declarations signed by employees in support of their second motion to dismiss and Plaintiffs filed declarations in support of their opposition to Defendants' second motion to dismiss. (*See* Docs. 41-1, 49-3, 49-4, 49-5.)

In ruling on Defendants' second motion to dismiss the Indiana District Court recognized:

> Case law generally holds that non-discretionary performance-based bonuses, which are not tied to the number of hours worked, are permissible under the FWW method. *Lalli v.Gen. Nutrition Ctrs., Inc*., 814 F.3d 1, 8 (1st Cir. 2016); *Wills v. RadioShack Corp*., 981 F.Supp.2d 245, 256 (S.D.N.Y. 2013); *Ouellette v. Fresh Market, Inc*., No. 3:13-cv-1027 (AWT), 2015 WL 13505210, at *3 (D.Conn. March 25, 2015) (citing *Wills*, 981 F.Supp. 2d. at 257); *Soderberg v. Naturescape, Inc*., No. 10 Civ. 3429, 2011 WL 11528148, at *4 5 (D. Minn. Nov. 3, 2011)). Hours-based or time-based

> bonuses—such as extra pay for holiday, weekend, or night shift work—are not permissible because employees receiving such bonuses are paid more than those who work non-premium hours. *Lalli*, 814 F.3d at 8; *Wills*, 981 F.Supp.2d at 256. Such employees "cannot be said to receive a 'fixed salary' regardless of hours worked; on the contrary, employees who work[] 'premium' hours [] receive more pay." *Wills*, 981 F.Supp.2d at 256 (emphasis in original).

(Doc. 106, PageID# 1252.)

Further, this Court found that, based on Plaintiffs' allegations in her Second Amended Complaint, the bonuses "fall somewhere in between permissible and impermissible use of the FWW method" and that "tying *discretionary* bonuses to the number of hours worked is a closer call." (*Id*. at PageID# 1254.) That ruling would be used as precedent or authority in each arbitration case.

As such, there are serious questions of law and fact that exist in the arbitrations that place the ultimate outcome of the hearings in doubt. (Ex. 2, ¶ 28.)

### 3. The Value of Immediate Settlement Outweighs the Mere Possibility of Future Relief After Protracted Litigation

By reaching this settlement, the Plaintiffs/Arbitration Claimants have eliminated the risk of going through the arbitration process and losing their claims on the merits. (Ex. 2 at ¶ 41.) The expense and likely duration of continued arbitration favor approval, in that wage-and-hour cases for groups of employees are always expensive and time-consuming, and this litigation has been expensive and time-consuming, lasting over two and half years (2.5) years. (*Id*..) The Parties have engaged in substantial investigation prior to and during the negotiations, including significant discovery and motion practice, and the issues are well understood by both sides. (*Id*. at ¶ 11.)

If approved by the Court, the Proposed Settlement will provide adequate payments to the Plaintiffs/Arbitration Claimants for unpaid overtime compensation. (*Id*. at ¶ 39.) Between

December 27, 2014 and October 29, 2016, the Plaintiffs/Arbitration Claimants allege that they were allegedly denied $197,574.49 in overtime compensation resulting in Defendants' practice of paying them one-half times their regular rate of pay, instead of one and one-half times their regular rate of pay for all hours worked over 40 in a week, based on the records provided by Defendants. (*Id*.)

Pursuant to the Settlement, Plaintiffs/Arbitration Claimants will recover approximately $100,000 of their alleged overtime damages before deduction of attorneys' fees and costs and service awards, and will receive approximately 30% of their alleged overtime damages after the deductions. (*Id*. at ¶ 40.)

Accordingly, the value of immediate settlement outweighs the mere possibility of future relief after protracted litigation, which could last many more years.

### 4. In the Judgment of the Parties and Counsel the Settlement is Fair and Reasonable.

The parties' counsel have extensive experience litigating FLSA claims. (*Id*.) The opinions of experienced counsel of the parties support the Settlement. (See Exhibit 2.)

### B. Plaintiffs' Counsel's Fees And Expenses Are Proper And Reasonable

The FLSA provides that a Court "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and the costs of the action." 29 U.S.C. § 216(b).

Courts in the Sixth Circuit, and around the country, routinely hold that one-third or (or more) of the settlement is an appropriate attorneys' fees award in wage and hour settlements. See *Taubenfeld v. AON Corp.*, 415 F.3d 597, 599-600 (7th Cir. 2005) (noting class/collective actions in Illinois have awarded fees of 30-39% of the settlement fund); *Castillo v. Noodles & Co.*, No. 16-CV-03036, 2016 WL 7451626, at *4 (N.D. Ill. Dec. 23, 2016)(awarding $1,000,000

in fees in $3,000,000 settlement); *Gaskill v. Gordon*, 160 F.3d 361, 362-63 (7th Cir. 1998) (affirming attorneys' fee award of 38% of settlement fund); *In re Dairy Farmers of Am., Inc.*, 80 F. Supp. 3d 838, 842 (N.D. Ill. 2015)(awarding 1/3 of common fund to attorneys' fees); *Goldsmith v. Tech. Solutions Co.*, No. 92 Civ. 4374, 1995 WL 17009594, at *7-8 (N.D. Ill. Oct. 10, 1995) ("where the percentage method is utilized, courts in this District commonly award attorneys' fees equal to approximately one-third or more of the recovery"); *Briggs v. PNC Fin. Servs. Grp., Inc.*, No. 1:15-CV-10447, 2016 WL 7018566, at *4 (N.D. Ill. Nov. 29, 2016)(awarding attorneys' fees of one-third of the total settlement); *Day v. NuCO2 Mgmt., LLC*, No. 1:18-CV-02088, 2018 WL 2473472, at *2 (N.D. Ill. May 18, 2018)("[o]ne-third of the total settlement fund is consistent with market rate" as required by the Seventh Circuit's instructions and finding that "the percentage method is appropriate here because Plaintiffs' Counsel accomplished what that method incentivizes: early resolution without wasteful litigation to increase loadstar hours"); *Furman v. At Home Stores LLC*, No. 1:16-CV-08190, 2017 WL 1730995, at *4 (N.D. Ill. May 1, 2017)(Plaintiffs' Counsel's decision to charge one-third was " reasonable in light of the significant risks of nonpayment that Plaintiff's Counsel faced"); *Goldsmith v. Tech. Solutions Co.*, No. 92 Civ. 4374, 1995 WL 17009594, at *7–8 (N.D. Ill. Oct. 10, 1995) ("where the percentage method is utilized, courts in this District commonly award attorneys' fees equal to approximately one-third or more of the recovery").

Plaintiffs' Counsel are experienced in litigating wage and hour collective and class actions. (*See* Exhibit 2.)

Plaintiffs' Counsel took this case on a contingent fee basis, meaning there was always a strong risk that they would not be paid. (*Id*. at ¶ 50.) As such, Plaintiffs' Counsel took "on a significant degree of risk of nonpayment" in agreeing to represent Plaintiffs. *Taubenfield*, 415

9

F.3f at 600 (approving district court's reliance on this factor in evaluating attorneys' fees). "As the Seventh Circuit has noted, Plaintiffs' Counsel 'could have lost everything they invested.'" *Castillo v. Noodles & Co.*, No. 16-CV-03036, 2016 WL 7451626, at *5 (N.D. Ill. Dec. 23, 2016) (quoting Matter of Cont'l Ill. Sec. Litig., 962 F.2d 566, 570 (7th Cir. 1992).

In *Fegley v. Higgins,* 19 F.3d 1126, 1134 (6th Cir. 1994), *cert. denied,* 513 U.S. 875 (1994), the Sixth Circuit held that the FLSA's mandatory attorneys' fee provision "insure[s] effective access to the judicial process by providing attorney fees for prevailing plaintiffs with wage and hour grievances," and thus "encourage[s] the vindication of congressionally identified policies and rights." *Fegley,* 19 F.3d at 1134 (quoting *United Slate, Tile & Composition Roofers, Damp and Waterproof Workers Ass'n, Local 307 v. G & M Roofing and Sheet Metal Co.,* 732 F.2d 495, 502 (6th Cir.1984)).

*Fegley* was followed in *Bessey v. Packerland Plainwell, Inc*. 2007 WL 3173972 (W.D. Mich. 2007), in which the district court approved a one-third attorneys' fee in an FLSA settlement very much like the one presented here. Fulfilling *Fegley*'s emphasis on "encourage[ing] the vindication of congressionally identified policies and rights," the *Bessey* court found "the percentage of fund method is the proper method in this case for compensating plaintiffs' counsel. The fact that the damages which could have been claimed by each class member were relatively modest provides a strong reason for adopting the percentage of recovery method, for it rewards counsel for taking on a case which might not otherwise be economically feasible." *Bessey*, 2007 WL 3173972, at *4 (citing *Rawlings v. Prudential Properties, Inc.*, 9 F.3d 513, 516 (6th Cir. 1993) (the district court "must make sure that [class] counsel is fairly compensated for the amount of work done as well as for the results achieved" and "the percentage of the fund method more accurately reflects the results achieved"). *Accord, In re*

*Revco Securities Litigation*, Fed. Sec. L. Rptr. ¶ 96,956, at 94,069 (N.D. Ohio 1993) ("'[t]he percentage of the fund approach… provides a fair and equitable means of determining attorney's fees'" because "'the size of a common fund is an objective yardstick by which the benefit conferred upon the class can be measured'").

In determining the reasonableness of the fee, the *Bessey* court considered the comparative data about Rule 23 class settlements summarized in *Shaw v. Toshiba America Information Systems, Inc.*, 91 F. Supp. 2d 942 (E.D. Tex. 2000), *discussed in Bessey*, 2007 WL 3173972, at *4:

> The most complete analysis of fee awards in class actions conducted to date was conducted by the National Economic Research Associates, an economics consulting firm. The data is reported at Frederick C. Dunbar, Todd S. Foster, Vinita M. Juneja, Denise N. Martin, Recent Trends III: What Explains Settlements in Shareholder Class Actions? (NERA, June 1995) (hereinafter "NERA Study"). <u>This data indicates that regardless of size, attorneys' fees average approximately 32% of the settlement</u>.

*Shaw*, 91 F. Supp. 2d at 988 (citing NERA Study at 7 & Exh. 12) (emphasis added).

The NERA Study relied upon in *Shaw* and *Bessey* showed the average fee to class counsel was approximately one-third of the settlement, while the average result achieved for class members was only 7% to 11% of claimed damages. Measured against that standard, the settlement in the present case is exemplary. The Individual Payments represent approximately 33% of the overtime compensation Plaintiffs/Arbitration Claimants were allegedly denied, after deduction of the attorneys' fees to Plaintiffs' Counsel. (*Id*. at ¶ 40.) The attorneys' fees requested are reasonable in light of the exceptional benefit achieved for Plaintiffs. (*Id*. at ¶ 45.)

Plaintiffs' Counsel vigorously litigated this case for approximately 2.5 years, engaged in substantial motion practice and discovery, and participated in lengthy and arduous settlement negotiations. (*Id*. at ¶ 48.) Had this case not settled, Plaintiffs' Counsel would have vigorously

arbitrated each case without any promise of success and compensation. (*Id*. at ¶ 51.) At every step of the litigation, Defendants could have succeeded. (*Id*.) Defendants could have been successful at obtaining summary judgment, and/or obtaining a defense decision during arbitration. (*Id*. at ¶ 41.) Therefore, the Plaintiffs/Arbitration Claimants were at great risk for non-payment. (*Id*. at ¶ 51.) This risk of non-payment strongly supports the amount requested here

## IV. CONCLUSION

The Plaintiffs/Arbitration Claimants request that the Court grant final approval of the FLSA Settlement, approve Plaintiffs' Counsel's request for attorneys' fees and costs, and direct distribution of payments according to the terms of the Settlement by entering the proposed order attached hereto as exhibit 4.

Respectfully submitted,

 /s/ Robert B. Kapitan
Robert B. Kapitan
Anthony J. Lazzaro
THE LAZZARO LAW FIRM, LLC
The Heritage Building, Suite 250
34555 Chagrin Boulevard
Moreland Hills, Ohio 44022
Phone: 216-696-5000
Facsimile: 216-696-7005
anthony@lazzarolawfirm.com
robert@lazzarolawfirm.com

Patrick Kasson
REMINGER CO., L.P.A.
200 Civic Center Drive, Suite 800
Columbus, Ohio 43215
Phone: (614) 232-2418
Fax:    (614) 232-2410
pkasson@reminger.com

*Attorneys for Plaintiffs/*
*Arbitration Claimants*

## **CERTIFICATE OF SERVICE**

  I hereby certify that on April 21, 2020, a copy of the foregoing *Plaintiffs/Arbitration Claimants' Motion For Approval Of Settlement And Stipulation Of Dismissal With Prejudice* was sent to all parties by operation of the Court's electronic filing system. Parties may access the filing through the Court's system.

          /s/ Robert B. Kapitan
          Robert B. Kapitan